```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  DANE WILSON, on behalf of himself and all   :
  others similarly situated,                  :     MEMORANDUM DECISION AND
                                              :     ORDER
                           Plaintiff,         :
                                              :     21-cv-1263-BMC
                 - against -                  :
                                              :
                                              :
  JAMAICA SERVICE PROGRAM FOR                 :
  OLDER ADULTS, INC., et ano.,                :
                                              :
                           Defendants.        :
                                              :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff Dane Wilson brings this action against his former employer, Jamaica Service Program for Older Adults, Inc. ("JSPOA") and JSPOA Board President William Collins, Jr. under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and New York Labor Law § 650 *et seq.* He alleges that he and others did not receive required overtime pay, were not paid for meal breaks that they had to work through, and were not timely paid.

Before me is plaintiff's motion to 1) use what he calls "representative testimony" at trial, and 2) introduce deposition testimony of absent opt-in plaintiffs regardless of whether those opt-ins are available to provide live testimony at trial. The motion is granted as to plaintiff's first request and denied as to his second.

## BACKGROUND

Plaintiff brought his FLSA action individually and on behalf of a putative collective of similarly situated employees. The Court granted preliminary approval to proceed collectively, at

which point notice of the action was disseminated to other individuals who defendants had employed. Eighteen people have opted into the collective.[1]

In the parties' joint proposed pretrial order in this action, plaintiff included all opt-ins on his witness list and indicated that he may "rely upon the testimony of some of the Opt-in Plaintiffs as representative testimony on behalf of all Opt-in Plaintiffs." Plaintiff also included deposition designations for some of the opt-ins. At the final pretrial conference, defendants objected to plaintiff's intended use of representative testimony, arguing that collective actions, unlike class actions, require each opt-in to establish the merits of that plaintiff's own action. Defendants further objected to plaintiff's attempted introduction of the opt-ins' testimony via deposition designation, arguing that Rule 32 only permits the introduction of non-adverse deposition testimony if a witness is unavailable.

After the instant motion was briefed, the Court held an evidentiary hearing pursuant to Federal Rule of Evidence 104(a) to determine the admissibility of the representative testimony, in which the Court heard testimony from three of the proposed representatives. Plaintiff then filed a declaration from a fourth proposed representative, and the parties subsequently submitted deposition transcripts from several non-testifying opt-in plaintiffs, including designations and counter-designations of relevant testimony.

## DISCUSSION

"Section 207(a)(1) of [the] FLSA requires that, 'for a workweek longer than forty hours,' an employee who works 'in excess of' forty hours shall be compensated for that excess work 'at a rate not less than one and one-half times the regular rate at which he is employed' (i.e., time and a half)." Lundy v. Cath. Health Sys. of Long Island Inc., 711 F.3d 106, 113-14 (2d Cir.

---

[1] Although the docket indicates that there are nineteen opt-ins, the parties have suggested in their papers and at hearings that there are eighteen. This discrepancy does not impact the Court's analysis.

2013). "To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011). If an employee is required to work during meal breaks and that work "predominantly" benefits the employer, that time must be counted in the employees working hours and the employee must be appropriately compensated for it. See Lundy, 711 F.3d at 112. "[A]lthough the FLSA 'does not explicitly require that wages be paid on time, the courts have long interpreted the statute to include a prompt pay requirement.'" Sarit v. Westside Tomato, Inc., No. 18-cv-11524, 2020 WL 1891983, at *4 (S.D.N.Y. April 16, 2020) (quoting Rogers v. City of Troy, 148 F.3d 52, 55 (2d Cir. 1998)).

Pursuant to Section 216(b) of the FLSA, an employer who violates Sections 206 or 207 is liable to its employees "for their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages," and any employee who is "similarly situated" to the named plaintiff can become a party plaintiff to the action. See Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 516 (2d Cir. 2020) ("party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims"). Permitting similarly situated plaintiffs to proceed collectively in pursuing alleged violations of their rights under the FLSA allows "for efficient adjudication of similar claims, so 'similarly situated' employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims." Lynch v. United Servs. Auto. Ass'n, 491 F.Supp.2d 357, 367 (S.D.N.Y. 2007). Consistent with this aim, "the collective-action framework presumes that similarly situated

employees are representative of each other and have the ability to proceed to trial collectively."
Monroe v. FTS USA, LLC, 860 F.3d 389, 409 (6th Cir. 2017).

### I.     Representative Testimony

A brief note on nomenclature is in order at the outset. The Court uses the term "representative testimony" in this decision for ease of reference and to be consistent with the parties' briefing and case law. However, the Court does not view the testimony of one member of the collective as "representative" of the collective on the whole. Rather, when opt-ins testify as to their alleged injuries, the factfinder may use that information to make reasonable inferences about the alleged injuries of similarly situated non-testifying opt-ins.

This distinction is not merely semantic – when plaintiffs opt into a collective, they join the action as party plaintiffs, with the same status as a plaintiff that joins a multi-plaintiff action. As the Sixth Circuit recently noted in Clark v. A&L Homecare & Training Ctr., LLC, 68 F.4th 1003, 1009 (6th Cir. 2023):

> [U]nlike a Rule 23 class action, an FLSA collective action is not representative – meaning that all plaintiffs in an FLSA action must affirmatively choose to become parties by opting into the collective action. Thus – in contrast to members of a Rule 23 class – similarly situated employees who join an FLSA action become parties with the same status in relation to the claims of the lawsuit as do the named plaintiffs. In sum, under Rule 23, the district court certifies the action itself as a class action; whereas in an FLSA action, under § 216(b), the district court simply adds parties to the suit.

(Cleaned up). Therefore, all members of the collective must prove their individual claims against their employer. That proof may take many forms, including documentary evidence, direct testimony, and inferential proof through the testimony of other collective members. Plaintiff's motion focuses on that final form of proof.

The Second Circuit permits representative testimony in FLSA actions to prove liability as to absent opt-ins. In Reich v. Southern New England Telecommunications Corp., 121 F.3d 58

4

(2d. Cir. 1997), the Court upheld a verdict against an employer for violating the FLSA where plaintiffs presented testimony from a "representative sample" constituting approximately 2.5% of the entire collective, noting that "it is well-established that the Secretary may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA." Reich, 121 F.3d at 67.  Similarly, in Harold Levinson Assocs., Inc. v. Chao, 37 F. App'x 19 (2d Cir. 2002), the Second Circuit approved representative testimony from a sample of employees to "provide a foundation for assumptions about the overall employee pool" with respect to FLSA liability.  Harold Levinson, 37 F. App'x at 21.  And in Grochowski v. Phoenix Construction, 318 F.3d 80 (2d Cir. 2003), the Court held that "not all employees need testify in order to prove FLSA violations or recoup back-wages[.]"  Grochowski, 318 F.3d at 88.  It is therefore well-established in this Circuit that "[t]estimony from a group of employee witnesses about the hours worked and pay received is sufficient representation to calculate the amount of wages owed to the enterprise's entire workforce."  Chao v. Vidtape, Inc., 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002), aff'd as modified, 66 F. App'x 261 (2d Cir. 2003).

      Relatedly, the Supreme Court has held that plaintiffs may use a "representative sample to establish classwide liability" in FLSA actions, allowing courts to "infer[] the hours an employee has worked from a study . . . so long as the study is otherwise admissible."  Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 460 (2016).  Although documentary evidence generated by representative sampling (e.g., aggregated data from sampling a subset of a group) is not identical to representative testimony, both types of evidence share the feature of proving liability or damages as to absent members of a group indirectly and inferentially through evidence regarding the experience of some subset of the group.

5

Decisions from outside the Second Circuit, while not binding on the Court, also provide support for the use of this kind of testimony in FLSA actions. As explained in <u>Ivanovs v. Bayada Home Health Care, Inc.</u>, No. 17-cv-1742, 2023 WL 3644637 (D.N.J. May 25, 2023), because "courts commonly allow representative employees to prove violations with respect to all employees . . . not all employees need to testify in order to prove the violations or to recoup back wages." <u>Ivanovs</u>, 2023 WL 3644637 at *3 (citing <u>Reich v. Gateway Press, Inc.</u>, 13 F.3d 685, 701 (3d Cir. 1994); <u>see</u> <u>also</u> <u>Monroe</u>, 860 F.3d at 400 (trial court "properly instructed the jury that FLSA procedure allows representative employees to file a lawsuit on behalf of a collective group and that the testimony of some may be considered representative proof on behalf of the whole class").

The court's treatment of representative testimony in <u>Stillman v. Staples, Inc.</u>, No. 07-cv-849, 2009 WL 1437817 (D.N.J. May 15, 2009), is particularly instructive. At trial, thirteen employees testified on behalf of a 342-member collective regarding the defendant's alleged FLSA violations, leading the jury to find the defendant liable as to all opt-ins. Defendant subsequently filed a motion for judgment as a matter of law, arguing that the plaintiff had failed to establish that defendant was liable to any of the non-testifying opt-ins, since the testimony at trial focused exclusively on the testifying members' injuries. The court rejected that argument, reasoning that plaintiffs may use "representative employees to prove violations with respect to all employees" to testify about "the job title, job description, job duties, work performed, the number of hours worked, and the compensation received or not received for hours worked in a week beyond forty hours." <u>Stillman</u>, 2009 WL 1437817 at *18. The court further explained that the jury could extrapolate from such testimony to "draw reasonable inferences with regard to non-testifying employees," including the "manner and amount of payment to employees, the

number of hours employees worked, and the employees' costs for uniforms and maintenance." Id.

Stillman is also notable for its discussion of establishing damages inferentially through testimony and evidence from a subset of the collective. Because the defendant employer had failed to provide salary information for absent opt-ins before the close of discovery, the court determined that it would use the lowest salary among the representative plaintiffs for the purpose of calculating back wages to the absent opt-ins. As the Stillman court put it, "plaintiffs need not present testimony of every member of the collective action to prove their case and recover damages." Id. Although calculating damages by extrapolation from representative testimony is necessarily imprecise, damages are not an exact science, especially in collective actions. Reich makes clear that the plaintiff's burden is to produce "sufficient evidence to establish that the employees have in fact performed work for which they were improperly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Reich, 121 F.3d at 67. At that point, the burden shifts to the defendant to "produce evidence of the precise amount of work performed or evidence to [negate] the reasonableness of the inference to be drawn from the employee's evidence," failing which "the court may award damages, *even though the result is only approximate*." Id. at 67, 70 (emphasis added).[2]

Romero v. Fla. Power & Light Co., No. 09-cv-1401, 2012 WL 1970125 (M.D. Fla. June 1, 2012), provides additional support for plaintiff's approach. The court examined several

---

[2] This burden-shifting framework, which traces its origins back to Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), applies when an employer "fails to keep records in conformity with his statutory duty," such as by destroying timesheets or not keeping records at all. See, e.g., Chao, 196 F.Supp.2d at 293. Here, plaintiff alleges that defendants coerced their employees to fill in their timesheets with the hours they were scheduled to work, rather than the hours they actually worked. If plaintiff establishes that theory at trial, then it follows that the burden-shifting framework applies, as it would mean defendants failed to keep accurate records of their employees' hours.

7

decisions that allowed "some employees to testify about a defendant's FLSA liability so that non-testifying plaintiffs can show the same by inference," Romero, 2012 WL 1970125 at *3, and referred to the "general rule that not all employees have to testify to prove overtime violations" in claims alleging violations of the FLSA. Id. at *4 (citing Morgan v. Fam. Dollar Stores, Inc., 551 F.3d 1233, 1279 (11th Cir. 2008)).

The court also considered and rejected the argument that representative testimony is permissible only in enforcement actions "brought by the Secretary of Labor under section § 216(c) of the FLSA," not collective actions brought by employees pursuant to § 216(b), an argument that defendants raise in the instant action. See id. at *3. I agree with the Romero court that this argument amounts to a distinction without a difference. Regardless of whether an employee or the Secretary of Labor brings the action, the plaintiff's prima facie burden to establish the employer's liability for violating the FLSA is the same.

The number of testifying opt-ins in this case as compared to the size of the total collective is relevant to the issue of representativeness. As plaintiff notes, there are several cases in which representative groups reflecting relatively small proportions of the collective were sufficient to establish liability as to the entire collective. See, e.g., Reich, 121 F.3d at 66-68 (permitting representative testimony from a subset constituting 2.5% of the collective). Here, plaintiff intends to have three to six opt-ins testify out of of eighteen total opt-ins, amounting to approximately 17% to 33% of the collective. The fact that the proposed testifying opt-ins constitute somewhere between one-fifth and one-third of the collective provides some indication that their testimony will be adequately similar to what the non-testifying opt-ins would testify to, allowing the jury to make reasonable inferences about those non-testifying opt-ins' injuries.

8

Although the Court places some weight on the size of the testifying group, "[i]t is axiomatic that the weight to be accorded evidence is a function not of quantity but of quality". Id. at 67. For that reason, the extent to which the testimony of the testifying opt-ins reflects the experiences of the non-testifying opt-ins has greater significance in determining whether to allow representative testimony. In Reich, the Second Circuit emphasized that the testifying witnesses included representatives from four of the five job categories in the complaint and additional employees with firsthand knowledge of the fifth category. The Court further explained that although many representative testimony cases involve "a fairly small employee population, a limited number of employee positions, and uniform work tasks," such as collectives with 26 or 98 opt-ins, there is no "bright line formulation" for how large the sample or collective must be. Id. So long as there is "sufficient evidence to show the amount and extent of work as a matter of just and reasonable inference," a verdict in an FLSA action may be based upon testimony from a relatively small portion of the collective. Id. at 69.

There is nothing novel about allowing representative testimony to be used in the context of multi-plaintiff litigation. For example, if there are two plaintiffs in a lawsuit with similar claims, there is generally no requirement that plaintiff B must testify on his own behalf instead of relying on plaintiff A's testimony. If plaintiff A's testimony is sufficiently probative of plaintiff B's claim that the court allows plaintiff B's claim to go to the jury, the jury may decide whether that testimony is sufficient to find in favor of Plaintiff B. Of course, depending on the facts of the case, plaintiff B may be taking a risk in wholly relying on plaintiff A's testimony. But that risk, with the Court's threshold approval as to the probative value of plaintiff A's testimony, is plaintiff B's to take.

9

Here, plaintiff has established that the testimony at trial has the potential to be reasonably applicable to the absent opt-ins. Each plaintiff who testified at the evidentiary hearing fell into a different job category, collectively representing all the job categories at issue in this action. The witnesses also testified that they had some knowledge of the alleged injuries of fellow employees from within their respective job category. The deposition transcripts of non-testifying opt-ins demonstrate that those opt-ins' allegations generally align with those of the opt-ins who testified at the evidentiary hearing, especially with respect to the collective's core allegations: delayed payments, lack of overtime compensation, lack of lunch breaks, and pressure from defendants' representatives to fill in timesheets with assigned hours rather than hours worked. These similarities are sufficient to establish the admissibility of the testifying witnesses' testimony on behalf of the absent opt-ins.

To be clear, the Court's decision to permit the testifying opt-ins' testimony is not an endorsement that the testimony will, in fact, be sufficient to establish either liability or damages as to the absent opt-ins. If the testimony offered at trial is not enough to convince the jury to find defendants liable with respect to the absent opt-ins, those opt-ins will not recover for their alleged injuries. Defendants will therefore not be unduly prejudiced by the testifying opt-ins' testimony, because they "retain the ability to challenge representative proof introduced by [collective] members regarding defendants' violation of the FLSA and the extent of damages." Johnson v. Wave Comm GR LLC, 4 F. Supp. 3d 453, 462 (N.D.N.Y. 2014). Relatedly, defendants may introduce "evidence to [negate] the reasonableness of the inference to be drawn from the employee's evidence," which could lead the jury not to apply the testimony from the testifying opt-ins to the absent opt-ins. See Reich, 121 F.3d at 68.

Defendants argue that representative testimony is inappropriate here because "the specifics of the individual wage claims of the opt-in plaintiffs in this case vary greatly." As already stated, any potential disparities between the testifying and non-testifying opt-ins are not so great as to render the testimony inadmissible, keeping in mind that "plaintiffs need show only that their positions are similar, not identical," to the collective's members. Wei Yu v. Kotobuki Rest., Inc., No. 17-cv-4202, 2018 WL 11458640, at *3 (E.D.N.Y. Sept. 20, 2018). Nevertheless, the Court agrees that there are some differences between the opt-ins' claims that could complicate the inferential extrapolation of the testimony presented at trial, including some disparate allegations regarding lunch breaks, days worked, and amounts of overtime. To that end, the jury will be instructed to consider any potential shortcomings in the opt-ins' testimony in determining "whether or not the plaintiffs have shown the testifying and non-testifying employees held the same job, performed similar duties, were compensated in the same way, and [were] impacted by the same company practice or policy." See Stillman, 2009 WL 1437817 at *18; see also Grochowski, 318 F.3d at 88 ("the plaintiffs must present sufficient evidence for the jury to make a reasonable inference as to the number of hours worked by non-testifying employees"). By offering proof via indirect rather than direct testimony, plaintiff proceeds at the risk of failing to establish liability or damages as to the absent opt-ins.[3]

## II.   Deposition Testimony

Plaintiff's argument in support of introducing the absent opt-ins' deposition testimony[4] at trial is unconvincing. Parties are permitted to introduce deposition testimony of an adverse party

---

[3] Particularly with regard to damages, the jury will be given the standard instruction that damages cannot be awarded to any plaintiff, original or opt-in, if those damages are speculative. Given the relatively small size of the collective, this risk may encourage plaintiff to present direct evidence from the opt-ins, rather than relying solely on the testimony of the proposed subset of testifying opt-ins.

[4] Introduction of designated excerpts of deposition testimony includes reading the deposition transcript into the trial record and playing recordings from a witness's deposition at trial.

11

(or its agents or representatives) at trial, regardless of whether the adverse party is available to provide live testimony. Fed R. Civ. P. 32. However, plaintiff seeks to introduce the depositions of his fellow members of the collective, who are necessarily not adverse parties to him in this action. Therefore, the only way he can introduce their testimony via deposition (as opposed to by calling those witnesses to testify live at trial) is if he can show that those witnesses are unavailable pursuant to Rule 32(a)(4), such as by demonstrating that they live more than 100 miles away from the trial, are physically unable to testify in-person, or are outside of the Court's subpoena power.

Plaintiff cites cases in which courts appear to have allowed parties to introduce non-adverse deposition testimony without establishing witness unavailability (under materially different circumstances than those before the Court), but he points to nothing that would require the Court to permit the introduction of such testimony. To the contrary, the Federal Rules of Evidence tell me that I cannot. Rule 804(b)(1) states that deposition testimony is not excluded under the rule against hearsay when the declarant is unavailable. But where a party fails to demonstrate a non-adverse witness's unavailability and attempts to offer that witness's out-of-court statements for the truth of the matters asserted, as plaintiff attempts to do here, those statements must be excluded as inadmissible hearsay. See United States v. Salerno, 505 U.S. 317, 321 (1992) ("Nothing in the language of Rule 804(b)(1) suggests that a court may admit former testimony absent satisfaction of each of the Rule's elements."). Plaintiff has not provided any "exceptional circumstances" for allowing deposition testimony to be used in lieu of live testimony, see Fed. R. Civ. P. 32(a)(4)(E), and Congress has not chosen to place an "FLSA exception" either within that statute or under the Federal Rules of Civil Procedure or the Federal Rules of Evidence. Consistent with these Rules, plaintiff may only introduce the deposition

testimony of the absent opt-ins if he can establish that those opt-ins are unavailable to provide live testimony at trial.

## CONCLUSION

For the foregoing reasons, plaintiff's [94] motion is granted in part and denied in part. The testifying opt-ins may offer testimony on behalf of the absent opt-ins at trial, which the jury may consider as evidence of defendants' liability and damages as to the absent opt-ins to the extent the jury finds such testimony sufficiently reliable, convincing, and applicable. But plaintiff may not introduce the deposition testimony of absent opt-ins, or any other non-adverse party, unless he first establishes their unavailability pursuant to Rule 32(a)(4).

By separate Order, the Court will set this matter down for a final pretrial conference and trial.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
       December 20, 2023

13