UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DANE WILSON, on behalf of himself and
all others similarly situated,                                           Case No.: 1:21-cv-01263-BMC

        Plaintiff,

    -against-

JAMAICA SERVICE PROGRAM FOR
OLDER ADULTS, INC., WILLIAM COLLINS, JR.
and BEVERLY COLLIER,

        Defendants.
-----------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR APPROVAL OF SETTLEMENT**

McLAUGHLIN & STERN, LLP
Jason S. Giaimo
Lee S. Shalov
Brett R. Gallaway
260 Madison Avenue
New York, New York 10016
Tel: (212) 448-1100
jgiaimo@mclaughlinstern.com
lshalov@mclaughlinstern.com
bgallaway@mclaughlinstern.com

*Attorneys for Plaintiff and the Class*

{N0753108.1}

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................... 1

I.  RELEVANT FACTUAL BACKGROUND.......................................................... 3

II.  TERMS OF THE SETTLEMENT...................................................................... 5

    A.  Settlement Collective Members.................................................................. 5

    B.  Calculation and Distribution of Gross Settlement Amount ........................ 6

    C.  Release of Claims ...................................................................................... 7

    D.  Attorneys' Fees, Costs, and Service Award .............................................. 7

III.  THE SETTLEMENT SHOULD BE APPROVED AND THE COLLECTIVE FINALLY CERTIFIED .............................................................................. 8

    A.  Standard for Settlement Approval Under the FLSA ................................. 8

    B.  The Settlement Represents a Reasonable Compromise of Disputed Issues ................. 9

    C.  The Monetary Terms and the Release Are Fair to the Plaintiffs ................11

    D.  The Proposed Service Payment to the Named Plaintiff is Fair and Reasonable......... 12

    E.  The Collective Should be Finally Certified for Settlement Purposes as the Plaintiffs are Similarly Situated ................................................ 13

IV.  M&S SHOULD BE AWARDED ATTORNEYS' FEES ................................ 14

    A.  The Percentage of the Fund Method Supports M&S's Fee Application.................... 14

    B.  A Lodestar Cross-Check Further Confirms the Reasonableness of M&S's Fee Application ........................................................... 19

V.  M&S SHOULE BE REIMBURSED FOR THEIR LITIGATION EXPENSES ................ 19

CONCLUSION................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips, Inc. v. Walling,*
    324 U.S. 490 (1945)...................................................................................... 8, 18

*Anyoku v. World Airways (In re Nigeria Charter Flights Litig.),*
    2011 U.S. Dist. LEXIS 155180 (E.D.N.Y. Aug. 25, 2011)............................... 17

*Barbecho v. M.A. Angeliades, Inc.,*
    2017 WL 1378267 (S.D.N.Y. Apr. 12, 2017).................................................11

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
    450 U.S. 728 (1981) ...................................................................................... 16

*Beckman v. KeyBank, N.A.,*
    293 F.R.D. 467 (S.D.N.Y. 2013) .................................................................... 9

*Bijoux v. Amerigroup N.Y., LLC,*
    2016 U.S. Dist. LEXIS 68969 (E.D.N.Y. May 12, 2016)................................. 17

*Brooklyn Sav. Bank v. O'Neil,*
    324 U.S. 697 (1945) ...................................................................................... 8

*Cheeks v. Freeport Pancake H., Inc.,*
    796 F.3d 199 (2d Cir. 2015) ......................................................................8, 11

*Diaz v. Scores Holding Co.,*
    2011 U.S. Dist. LEXIS 112187 (S.D.N.Y. July 11, 2011) ............................... 12

*Flores v. Food Express Rego Park, Inc.,*
    2016 WL 386042 (E.D.N.Y. Feb. 1, 2016) ..................................................... 8

*Frank v. Eastman Kodak Co.,*
    228 F.R.D 174 (W.D.N.Y. 2005).................................................................11

*Garcia v. Pancho Villa's of Huntington Village, Inc.,*
    2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012)................................................. 9, 17

*Goldberger v. Integrated Res. Inc.,*
    209 F.3d 43 (2d Cir. 2000) ................................................................ 14, 18, 19

*Hall v. Prosource Techs., LLC,*
    2016 U.S. Dist. LEXIS 53791 (E.D.N.Y. Apr. 11, 2016).................................. 18

*Hernandez v. Merrill Lynch & Co.,*
    2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ................................................. 8

*In re Austrian & German Bank Holocaust Litigation*,
  80 F. Supp. 2d 146 (S.D.N.Y. 2000) ...............................................................11

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) ............................................................... 18

*Karic v. Major Auto. Cos.*,
  2016 U.S. Dist. LEXIS 57782 (E.D.N.Y. Apr. 27, 2016) ................................ 10

*Khait v. Whirlpool Corp.*,
  2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010)................................... 20

*Marichal v. Attending Home Care Servs., LLC*,
  432 F. Supp. 3d 271 (E.D.N.Y. Jan 13. 2020).................................................11

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012)............................................................... 9

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ............................................................................ 13

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) .............................................................................11

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
  2010 U.S. Dist. LEXIS 12872 (S.D.N.Y. Feb. 9, 2010) .................................. 12

*Pucciarelli v. Lakeview Cars, Inc.*,
  2017 U.S. Dist. LEXIS 98641 (E.D.N.Y. June 23, 2017)................................. 19

*Rangel v. 639 Grand St. Meat & Produce Corp.*,
  2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) ............................. 17

*Rasulev v. Good Care Agency, Inc.*,
  2017 U.S. Dist. LEXIS 221519 (E.D.N.Y. July 28, 2017) ................................. 9

*Romero v. La Revise Associates, L.L.C.*,
  58 F. Supp. 3d 411 (S.D.N.Y. 2014) ................................................................. 9

*Rosenfeld v. Lenich*,
  2021 U.S. Dist. LEXIS 26950 (E.D.N.Y. Feb. 11, 2021) ................................ 10

*Sewell v. Bovis Lend Lease LMB, Inc.*,
  2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 20, 2012)........................... 12, 16

*Summa v. Hofstra Univ.*,
  2012 U.S. Dist. LEXIS 206114 (E.D.N.Y. Feb. 22, 2012) ......................... 13, 14

*Velez v. Majik Cleaning Serv.*,
    2007 U.S. Dist. LEXIS 4623 (S.D.N.Y. June 22, 2007) ................................................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ......................................................................... 9, 14

*Willix v. Healthfirst, Inc.*,
    2010 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) ................................................. 12

*Wollinsky v. Scholastic Inc.*,
    900 F. Supp. 2d 332 (S.D.N.Y. 2012) ............................................................... 8

*Wu v. Maxphoto NY Corp.*,
    2016 U.S. Dist. LEXIS 158991 (E.D.N.Y. Nov. 15, 2016).............................................. 17

*Yuzary v. HSBC Bank USA, N.A.*,
    2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013).............................................. 20

**Statutes**

Fair Labor Standards Act, 29 U.S.C. 201, *et seq.* .............................................................. passim

New York Labor Law.......................................................................................... 3, 18

**PRELIMINARY STATEMENT**

Plaintiff Dane Wilson ("Plaintiff" or "Wilson") and the Opt-in Plaintiffs (collectively, "Plaintiffs"), together with Defendants Jamaica Service Program for Older Adults, Inc. ("JSPOA") and William Collins, Jr. ("Collins") (collectively, "Defendants") are pleased to present to the Court for approval a settlement of this collective wage and hour lawsuit.[1]  More specifically, as further discussed below, Plaintiffs and Defendants agreed to settle all claims in this action in exchange for a non-reversionary total cash payment of $170,000, which the parties submit is fair and reasonable and warrants the Court's approval.

Plaintiffs are former non-exempt hourly employees of JSPOA, who allege that they were denied compensation for straight and overtime hours that they worked as a result of JSPOA's timekeeping practices and policies.  Plaintiffs further allege that on numerous occasions throughout their employment, Defendants improperly delayed the payment of wages in violation of applicable law.  Plaintiffs further maintain that Collins, the President of the Board of JSPOA, was a joint employer with JSPOA and responsible to Plaintiffs for the alleged underpayments.  At all relevant times, Defendants denied these allegations and Plaintiffs' purported entitlement to relief.

On October 15, 2021, the Court conditionally certified the collective action and each of the Opt-in Plaintiffs thereafter submitted Consent to Join forms and opted into the action as party plaintiffs.  After the completion of substantial discovery and the denial of Collins' motion for partial summary judgment, the parties were set for trial to commence on July 29, 2024.  On the eve of trial, however, the parties agreed to settle the claims in this action in exchange for a non-

---

[1]      Unless otherwise defined, all capitalized terms used herein shall have the same meaning as used in the Settlement Agreement dated September 24, 2024 (a/k/a the "Agreement" or "Settlement"), which is being submitted contemporaneously herewith.

reversionary total cash payment of $170,000 (the "Gross Settlement Amount"), which Defendants shall pay within 30 days of the Court's approval of the Settlement.

The Settlement—which will provide substantial all-cash payments to Plaintiffs, many of whom are low to medium income earners—strongly considers Defendants' financial conditional and inability to pay a greater sum or in a shorter duration.  The Settlement also takes into account the uncertainties and substantial risks to all parties if the matter were to proceed to a jury trial. Indeed, the Settlement was negotiated at arms'-length between sophisticated counsel and represents a reasonable compromise of bona fide disputes.  In fact, the parties were fully prepared to proceed with a jury trial, and only settled this action at the eleventh hour with the assistance and urging of the Court.

Moreover, far from a "run-of-the-mill" FLSA collective action, this litigation involved complex issues on a number of fronts, including, *inter alia*, the anticipated use of representative testimony on liability and damages at trial, meal break and time rounding and schedule-based claims involving 20 employees with purportedly varied work experiences, and Defendants' incomplete time and payroll records, which would have required the jury to considered the testimony of Plaintiffs to determine whether a just and reasonable inference as to the number of hours worked would be appropriate, which Defendants could then rebut.  There can be no doubt that Plaintiffs faced serious risks if the litigation were to continue, including the risk that they would obtain no recovery after trial.  The Settlement, on the other hand, provides meaningful and concrete relief to Plaintiffs in a fair and equitable manner.  Accordingly, Plaintiffs and Defendants respectfully request that the Court grant approval of the parties' Settlement, including granting final collective certification for settlement purposes.

Additionally, Plaintiffs' counsel—McLaughlin & Stern, LLP ("M&S")—respectfully requests an award of attorneys' fees of one-third of the Gross Settlement Amount (*i.e.*, $56,666.67), in recognition of the results achieved for Plaintiffs and the substantial work performed over the past 3 ½ years.  M&S aggressively litigated this case on behalf of Plaintiff since its inception, pushing for extensive discovery, successfully obtaining conditional certification, successfully defeating Collins' motion for summary judgment, successfully obtaining a ruling permitting the use of representative testimony at trial, and ultimately settling this action on favorable terms to Plaintiffs, who will receive fairly significant monetary compensation as a result.  As of September 13, 2024, M&S has spent 677.05 hours in this litigation, with a lodestar of $323,223.75.  An award of one-third of the Gross Settlement Amount would result in a negative multiplier of 5.7, which is well within the range of reasonableness.  For these reasons, as further set forth below, M&S respectfully requests that their fee request be granted.

## I.      RELEVANT FACTUAL BACKGROUND

Plaintiff commenced this action on March 9, 2021, alleging violations of the FLSA and NYLL against Defendants on behalf of himself and all other similarly situated non-exempt employees ("Hourly Employees").  *See* Dkt. No. 1.  Specifically, Plaintiff alleged that Defendants engaged in illegal and improper wage practices that deprived himself and other similarly situated Hourly Employees of wages and overtime compensation, including: (i) improperly penalizing Hourly Employees by paying them according to their scheduled shifts, rather than time actually spent working, either by virtue of time sheets or configuring the time clocks in Defendants' facilities to reduce the amount of time Hourly Employees were credited with performing work; and (ii) automatically deducting time for meal breaks when Hourly Employees were performing work during that time.  *See id.*  Plaintiff also alleged that Defendants improperly delayed the

payment of wages to Hourly Employees on numerous occasions throughout the relevant time period.  *See id.*

On June 17, 2021, Defendants JSPOA and Collins separately filed their answers to the Complaint.  *See* Dkt. Nos. 28-29.[2]  On July 20, 2021, Plaintiff moved for conditional certification of the action pursuant to 29 U.S.C. § 216(b).  *See* Dkt. Nos. 35-38.  On October 12, 2021, the Court granted Plaintiff's motion for conditional certification.  *See* Dkt. No. 43.  Thereafter, notice of the conditional certification order was sent to prospective collective members and each of the Opt-in Plaintiffs submitted Consent to Join forms and became party plaintiffs.  *See* Declaration of Jason S. Giaimo dated September 26, 2024 ("Giaimo Dec.") at ¶ 11.  More specifically, each of the Opt-in Plaintiffs joined the lawsuit between December 13, 2021 and January 19, 2021.  *See* Dkt. Nos. 45-66.

Thereafter, the parties engaged in substantial discovery.  To this end, Plaintiffs served numerous document demands and interrogatories upon Defendants, and deposed Collins, as well as Sharon Alexander, the Executive Director of JSPOA.  *See* Giaimo Dec., ¶¶ 12, 14.  Defendants similarly served document demands and interrogatories, and deposed a number of the Opt-in Plaintiffs, including Michele Edgehill, Juan Munoz, Valda Edwards, Jennifer Forino, Dayawatie Ramnarain, and Hermione Michele.  *See id.* at ¶¶ 13, 15.  On June 8, 2022, Defendants moved for partial summary judgment, seeking dismissal of Plaintiffs' claims against Collins.  *See* Dkt. Nos. 79-84.  Plaintiffs opposed Defendants' motion (*see* Dkt. Nos. 85-88), and on July 12, 2023, the Court denied Defendants' motion.  *See* Dkt. No. 92.

The parties then engaged in substantial briefing concerning the use of representative testimony by certain Plaintiffs at trial.  *See* Giaimo Dec., ¶ 19; *see* Dkt. Nos. 94-95.  On October

---

[2]    On July 7, 2021, defendant Beverly Collier was dismissed from the action pursuant to stipulation.  *See* Dkt. No. 32.

26, 2023, the Court held a hearing on Plaintiffs' request to proceed with representative testimony, and heard testimony from Plaintiffs Dane Wilson, Michele Edgehill, and Shaine Parkinson. *See* Giaimo Dec., ¶ 20. The Court also considered the Declaration of Alexander Braswell. *See* Dkt. No. 100. On December 21, 2023, the Court granted Plaintiffs' request to proceed with the use of representative testimony at trial, holding that the testifying opt-in plaintiffs may offer testimony on behalf of the absent opt-ins at trial, which the jury may consider as evidence of Defendants' liability and damages as to the absent opt-ins to the extent the jury finds such testimony sufficiently reliable, convincing, and applicable. *See* Dkt. No. 102.

Originally, the parties were scheduled to proceed with trial commencing on May 6, 2024. *See* Giaimo Dec., ¶ 22. On April 24, 2024, the trial was adjourned to accommodate Defendants' counsel's conflicting trial schedule. *See id.* The trial was then scheduled to commence on July 29, 2024, with jury selection to take place before Magistrate Judge Scanlon. *See id.* On July 26, 2024, the parties agreed to the principal terms of the Settlement, which the parties then reduced to writing and which is now being presented to the Court for approval. *See id.* at ¶ 24.

## II.    TERMS OF THE SETTLEMENT

### A.    Settlement Collective Members

The Settlement is on behalf of Plaintiff and all Opt-in Plaintiffs who worked for JSPOA during the time period from March 9, 2015 to March 9, 2021. As mentioned above, each of the Plaintiffs has already affirmatively opted into the action. *See* Giaimo Decl., ¶ 11. Additionally, M&S has confirmed that each of the Plaintiffs (with the exception of Juan Munoz)[3] assents to the

---

[3]    More specifically, M&S has spoken with each of the Plaintiffs and confirmed that each of them assents to and agrees with the Settlement, with the exception of Juan Munoz, who M&S has been unable to communicate with concerning the Settlement. *See id.* at ¶ 30. Based on M&S's investigation, it appears that Mr. Munoz has passed away and, despite diligent efforts, M&S has been unable to get in touch with anyone from Mr. Munoz's estate or his representatives. *See id.* As such, Mr. Munoz is not a party to the Agreement.

terms of the Settlement.  *See id.*  The Settlement is only on behalf of the Plaintiffs and is not on behalf of any other current and/or former hourly paid and non-exempt employee of Defendants.

Upon approval of the Settlement, each of the Plaintiffs will receive their proportionate share of the Settlement based on the number of weeks worked during the applicable period.  *See* Agreement, ¶ 1.3.  If one or more of the Plaintiffs does not timely deposit or otherwise cash their settlement payment (*i.e.*, within 60 days of issuance), his or her proportionate share of the Settlement shall be redistributed to the participating Plaintiffs.  *See id*.  In other words, the Settlement is non-reversionary, and no funds shall revert back to Defendants.

### B.    Calculation and Distribution of Gross Settlement Amount

The total amount paid by Defendants as part of the settlement will be $170,000.00 to be paid by Defendants within 30 days of approval of the Settlement by the Court.  From the Gross Settlement Amount will be deducted: (i) Court-approved attorneys' fees, costs, and expenses for Plaintiffs' counsel; and (ii) Court-approved Service Award to Wilson.  The amount remaining after these deductions, called the Net Settlement Fund, will be distributed to Plaintiffs on a pro rata basis.

Specifically, each Plaintiff will be assigned an individual percentage amount of the Gross Settlement Amount based on their individual number of weeks worked during the applicable period compared to the total amount of such workweeks attributable to all Plaintiffs.  *See id*. Each Plaintiffs' percentage amount of the Gross Settlement Amount shall be assigned to the Net Settlement Fund in order to compute that Plaintiffs' share of the Net Settlement Fund. *Id.* For example, if there are 1,000 total workweeks amongst all Plaintiffs and an individual Plaintiff is allocated 100 workweeks, that Plaintiff's percentage of the Net Settlement Fund is 10%, and the Net Settlement Fund is $100,000.00, then that Class Member's Individual Settlement Amount would be $10,000. *Id.*

The Settlement is non-reversionary and not claims made. Plaintiffs do not need to affirmatively opt-in in order to participate. All Plaintiffs shall receive settlement payments reflecting their proportionate share of the Net Settlement Fund. If, however, one or more of the Plaintiffs does not timely deposit their settlement payment, that amount shall be re-distributed to each of the Plaintiffs who did timely deposit their settlement payments. *See id.*

Additionally, both JSPOA and Collins have executed Confessions of Judgment in favor of Plaintiffs to ensure compliance with the terms of the Agreement. *See* Agreement, ¶ 1.5. In the event of a default in the performance of the Agreement, Plaintiffs shall be entitled to obtain a money judgment against Defendants for all amounts then remaining outstanding. *See id.*

### C.    Release of Claims

All Plaintiffs will release Defendants and Releasees, as defined in Section 2 of the Agreement, from all New York state wage and hour claims, which includes any and all wage and hour claims that have been brought or could have been brought under the New York Labor Law, the New York Minimum Wage Act, and the New York Wage Theft Prevention Act, and or the regulations under such statutes, laws, and wage order, or common law, for work performed at or on behalf of Defendants. Similarly, all Plaintiffs who cash or otherwise deposit their settlement payment shall release Defendants and Releasees from all federal wage and hour claims, which includes all wage and hour claims that have been brought or could have been brought under the FLSA and the regulations thereunder for work performed at or on behalf of Defendants. *See id.*

### D.    Attorneys' Fees, Costs, and Service Award

As further discussed in Point IV, below, M&S, is seeking an award of attorneys' fees of no more than one-third of the Gross Settlement Amount (*i.e.*, $56,666.67), for the substantial work they performed, the risks they confronted and the results they achieved on behalf of Plaintiffs. M&S is also requesting reimbursement of their litigation costs and expenses of $10,938.50 to be

paid from the Gross Settlement Amount, which M&S necessarily incurred in the prosecution of this action. Finally, Plaintiffs request a service award of $10,000 to Wilson in recognition of the substantial time and effort he contributed to the successful prosecution of this action.

## III.    THE SETTLEMENT SHOULD BE APPROVED AND THE COLLECTIVE FINALLY CERTIFIED

### A.    Standard for Settlement Approval Under the FLSA

The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c); or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *See Cheeks v. Freeport Pancake H., Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). "Requiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Cheeks*, 796 F.3d at 206 (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

The standard for approval of an action arising under the FLSA requires only a determination the proposed settlement is "fair and reasonable." *Flores v. Food Express Rego Park, Inc.*, 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016) (quoting *Wollinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Hernandez v. Merrill Lynch & Co.*, 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable

compromise over contested issues, the settlement should be approved." *Id.*; *see also Rasulev v. Good Care Agency, Inc.*, 2017 U.S. Dist. LEXIS 221519, at *7-8 (E.D.N.Y. July 28, 2017) (recognizing that the law "strongly favors compromise and settlement of class actions").

Importantly, "[e]valuation of an FLSA settlement is less rigorous than the court's evaluation of a class action settlement 'because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date.'" *Romero v. La Revise Associates, L.L.C.*, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014) (quoting *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)).

The Settlement in the instant case meets the requirements for fairness and reasonableness and the goals of the FLSA and should be approved by the Court.

**B.      The Settlement Represents a Reasonable Compromise of Disputed Issues**

The Settlement reflects a reasonable compromise of genuinely disputed issues related to the merits of Plaintiffs' claims.  It is well-settled that risks are "inherent" in litigation. *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 WL 5305694, at *5 (E.D.N.Y. Oct. 4, 2012) (citations omitted).  Indeed, "the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Id.* (citing *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012)).  Moreover, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

Here, while Plaintiffs contend that they did not receive compensation for all hours worked for Defendants, including overtime for hours worked in excess of 40 hours in a week, Defendants maintain that the time sheets signed by each of the Plaintiffs confirmed their agreement that the hours reflected on those sheets evidenced their actual hours worked and not just their scheduled

hours.  Additionally, while Plaintiffs maintained that they routinely worked during all or portions of their uncompensated meal breaks, Defendants maintained that Plaintiffs always received completely uninterrupted meal breaks, such that Plaintiffs are not owed any additional compensation for this alleged time worked.

Collective actions, "especially in the context of FLSA claims, are inherently complex." *Karic v. Major Auto. Cos.*, 2016 U.S. Dist. LEXIS 57782, at *16 (E.D.N.Y. Apr. 27, 2016) (noting that further litigation "would clearly cause additional expense and delay"); *Rosenfeld v. Lenich*, 2021 U.S. Dist. LEXIS 26950, at *16 (E.D.N.Y. Feb. 11, 2021) ("[c]lass action suits have a well-deserved reputation as being most complex") (internal quotation and citation omitted).  This case is no exception.  Plaintiffs faced a significant risk at trial that the jury would conclude that Plaintiffs did not work additional hours beyond those reflected in their time sheets.  Moreover, Plaintiffs faced significant risk at trial that the jury would conclude that the testimony of certain opt-in Plaintiffs was not sufficiently similar to enable the jury to consider such testimony as representative of the non-testifying Plaintiffs.  There was also considerable risk that even if Plaintiffs were successful at trial on liability, the jury would consider the damages to be too speculative.  The Settlement, on the other hand, alleviates this uncertainty and provides meaningful relief to Plaintiffs.

Additionally, the Settlement was negotiated at all times at arms'-length between sophisticated counsel for both parties.  The attorneys from M&S representing Plaintiffs have substantial experience negotiating class-wide settlements and utilized their collective 40+ years of experience in negotiating a favorable settlement on behalf of Plaintiffs. *See* Giaimo Decl., ¶ 44. Only after significant back-and-forth and hard-fought negotiations, the parties arrived at the Settlement being presented in this motion on the eve of trial.  Moreover, each of the Plaintiffs (with

the exception of Mr. Munoz, who appears to be deceased) have confirmed their agreement to the material terms of the Settlement. *See id.* at ¶ 30; *see also Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 282 n. 4 (E.D.N.Y. Jan 13. 2020) (recognizing that a "single-step approval under *Cheeks* would be appropriate if the Court had before it a settlement agreement signed by all Opt-in Plaintiffs or ***a declaration indicating that each Opt-in Plaintiff assented to the terms of the Settlement Agreement***.") (emphasis added).

In the face of these risks, Plaintiffs and M&S negotiated the Settlement, which provides substantial relief, as further discussed below.

### C.    The Monetary Terms and the Release Are Fair to the Plaintiffs

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litigation*, 80 F. Supp. 2d 146, 178 (S.D.N.Y. 2000)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id*. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Using a three-year statute of limitations for Plaintiffs' FLSA claims, the Gross Settlement Amount represents a significant monetary recovery of the total, unliquidated damages that Plaintiffs could have recovered if they were successful at trial.  Given the substantial risks and uncertainties associated with continued litigation, the Settlement is a fair and reasonable resolution of the dispute and should be approved.  *See, e.g.*, *Barbecho v. M.A. Angeliades, Inc.*, 2017 WL 1378267, at *3 (S.D.N.Y. Apr. 12, 2017) (finding settlement amount representing less than one-half of each plaintiff's total claimed damages reasonable as it was conceivable that plaintiffs could recover less at trial).

**D.      The Proposed Service Payment to the Named Plaintiff is Fair and Reasonable**

"In FLSA actions, just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Diaz v. Scores Holding Co.*, 2011 U.S. Dist. LEXIS 112187, at *10 (S.D.N.Y. July 11, 2011) (citing *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12872 (S.D.N.Y. Feb. 9, 2010); *Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 4623 (S.D.N.Y. June 22, 2007)).  That is particularly true in employment litigation, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Velez*, 2007 U.S. Dist. LEXIS 46223 at *23.

Here, Wilson seeks a service award of $10,000, a sum that is well within the range of awards approved by other courts in collective and class actions of this nature.  *See Willix v. Healthfirst, Inc.*, 2010 U.S. Dist. LEXIS 21102, at *19-20 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,000); *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, at *40-42 (S.D.N.Y. Apr. 20, 2012) (approving service awards of $15,000 and $10,000 for the class representatives).

Wilson actively participated in the litigation and was instrumental in its success. As described in the Giaimo Declaration, Wilson was in constant communication with Plaintiffs' Counsel from the beginning of the case until its resolution.  *See* Giaimo Dec., ¶ 52.  Among other things, Wilson also submitted a declaration in support of Plaintiff's motion for conditional certification, participated in discovery, and appeared before the Court and testified in support Plaintiffs' request to use representative testimony at trial.  *See id.*

For the foregoing reasons, the requested service award is reasonable and appropriate to compensate Wilson for the work he performed and the risks he undertook in initiating this litigation and helping achieve a successful resolution.

**E.      The Collective Should be Finally Certified for Settlement Purposes as the Plaintiffs are Similarly Situated**

The FLSA utilizes a two-step certification process, whereby in the first stage, the Court initially determines whether conditional certification is appropriate, *i.e.*, there is a group of employees similarly situated to the named plaintiff, and in the second stage, the Court, based on a fuller record, determine whether the collective action should be finally certified by determining whether the plaintiffs who have opted in are, in fact, similarly situated. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). The Court can conclude that the opt-ins are in fact similarly situated through its review of a proposed settlement. *See Summa v. Hofstra Univ.*, 2012 U.S. Dist. LEXIS 206114, at *5-6 (E.D.N.Y. Feb. 22, 2012) ("The Court has determined that the [opt-in and original plaintiffs] are similarly situated within the meaning of Section 16(b) of the FLSA, 29 U.S.C. § 216(b), for the purposes of determining whether the terms of the settlement are fair.").

As discussed above, the Court already conditionally certified the collective pursuant to its Order dated October 12, 2021. *See* Dkt. No. 43. The Court should similarly grant final collective certification for settlement purposes as Plaintiff and the Opt-in Plaintiffs are, in fact, similarly situated. Indeed, all Plaintiffs allege that they were non-exempt hourly employees of Defendants who were not compensated for all hours worked because they worked hours before and/or after their scheduled shifts and during their uncompensated meal breaks. In fact, numerous employees testified to their similar work experiences in connection with Plaintiffs' motion for approval of the use of representative testimony, which motion was granted. *See* Dkt. No. 102. Moreover, Defendants do not object to final collective certification for purposes of the Settlement. *See*

*Summa*, 2012 U.S. Dist. LEXIS 206114 at *5-6 (granting final collective certification where the plaintiffs submitted evidence that the Class Members were denied minimum wage and/or overtime for all hours worked and Defendant did not object to final certification for settlement purposes). Accordingly, the Court should grant final collective certification for settlement purposes.

## IV.    M&S SHOULD BE AWARDED ATTORNEYS' FEES

### A.    The Percentage of the Fund Method Supports M&S's Fee Application

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method—courts in this Circuit consistently prefer the percentage of the fund method in common fund wage and hour class action cases like this one. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("[t]he trend in this Circuit is toward the percentage method . . . .").

Ultimately, reasonableness is the touchstone for determining attorneys' fees. In *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Here, all of the *Goldberger* factors weigh in favor of granting approval of M&S's fee application.

***First***, the time and labor expended by M&S in litigating this action over the past 3 ½ years is substantial. As described in further detail in the Giaimo Declaration, M&S performed a variety of tasks that culminated in the creation of the Gross Settlement Amount, including:

- Extensive factual and legal research regarding Plaintiffs' claims;

- Drafting a comprehensive Complaint;

- Drafting and serving extensive document demands and interrogatories;

- Reviewing hundreds of pages of documents from Defendants, including Plaintiffs' time and payroll records;

- Successfully moving for conditional certification pursuant to 29 U.S.C. § 216(b);

- Successfully opposing Defendants' motion for summary judgment as to Collins;

- Successfully moving for approval to use representative testimony at trial;

- Extensive trial preparation, including drafting voluminous and detailed trial outlines, proposed jury instructions, proposed jury verdict forms, and proposed *voir dire* questions, as well as preparing numerous Plaintiffs for their anticipated trial testimony;

- Speaking extensively with Plaintiffs about their work experiences for Defendants;

- Negotiating the Settlement, including revising the Agreement; and

- Drafting the instant motion for approval of the Settlement and communicating with Plaintiffs about the Settlement.

*See* Giaimo Dec., ¶ 40.

In performing these tasks, M&S has expended over 677 hours of professional time for an aggregate lodestar of $323,223.75.  *See id.* at ¶¶ 47-48.  M&S believes the hours reported are reasonable for a case of this complexity and magnitude and were compiled from time records maintained by each attorney, paralegal, and support staff participating in the case.  *See id.*  Notably, the requested fee is not based solely on time and effort already expended; it is also meant to compensate M&S for time they will spend communicating with the Plaintiffs regarding any

settlement administration issues. In M&S's experience, administering class settlements of this nature requires a substantial and ongoing commitment.[4]

By any measure, the time and labor devoted by M&S in this case was substantial. The net result of these extensive efforts was the creation of the Gross Settlement Amount, which will provide meaningful relief to Plaintiffs who otherwise would have received little, if any, recovery in the absence of M&S's efforts.

*Second*, the magnitude and complexities of the litigation favor approval of the fee request. As the Supreme Court has recognized, "FLSA claims typically involve complex mixed questions of fact and law . . . [t]hese statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). This case is no different. Indeed, this matter involved a myriad of complex factual and legal issues requiring significant briefing and legal analysis, including the conditional certification of Plaintiffs' claims, Collins' motion for summary judgment, and the use of representative testimony at trial. But for the Settlement, a complicated jury trial would have been necessary, and any verdict would have likely been appealed. As such, this factor favors approval.

*Third*, the risk of litigation similarly favors approval of Plaintiffs' counsel's fee request. As mentioned above, the risks attendant to the litigation were significant. While Plaintiffs were confident in their claims and ability to prevail at trial, there can be no doubt that a jury trial involving the testimony of only a handful of Opt-in Plaintiffs presented significant risks, both in terms of liability and establishing damages. In the face of these risks, Plaintiffs negotiated the

---

[4]    Indeed, "where class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell*, 2012 U.S. Dist. LEXIS 53556 *38 (internal quotations and citations omitted).

Settlement, which will provide meaningful relief. Moreover, given Defendants' financial condition, even if Plaintiffs were successful at trial, the likelihood of recovery was low. Accordingly, the risk of litigation and collection weigh heavily in favor of approval.

*Fourth*, the quality of Plaintiffs' counsel's representation favors approval. "To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Anyoku v. World Airways (In re Nigeria Charter Flights Litig.)*, 2011 U.S. Dist. LEXIS 155180, *27 (E.D.N.Y. Aug. 25, 2011). Viewed in the context of the recovery achieved, the Gross Settlement Amount represents a significant portion of the compensatory damages Plaintiffs allegedly sustained in they were successful on all claims at trial. M&S's experience also weighs in favor of approving their requested fee. M&S has substantial experience prosecuting large-scale class and wage and hour actions such as this. *See* Giaimo Decl., ¶ 44. M&S's skill and experience directly brought about the favorable settlement of behalf of Plaintiffs and weighs in favor of granting the requested fee.

*Fifth*, the requested fee in relation to the settlement also favors approval of the fee request. Here, M&S's one-third fee request is "reasonable and consistent with the norms of class litigation in this circuit." *Wu v. Maxphoto NY Corp.*, 2016 U.S. Dist. LEXIS 158991, *38 (E.D.N.Y. Nov. 15, 2016) (quoting *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 2012 U.S. Dist. LEXIS 144446, *8 (E.D.N.Y. Oct. 4, 2012)). Indeed, courts in this Circuit routinely grant requests of one-third of settlement funds in FLSA class actions such as this. *See, e.g.*, *Bijoux v. Amerigroup N.Y., LLC*, 2016 U.S. Dist. LEXIS 68969, *3-4 (E.D.N.Y. May 12, 2016) (awarding attorneys' fees totaling $550,000, which equated to one-third of the settlement fund); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, *4 (E.D.N.Y. Sept. 19, 2013) (approving one-third fee arrangement in FLSA settlement and recognizing that such a fee is "routinely

approved by courts in this Circuit"). Thus, M&S are by no means requesting a "windfall" for their efforts on behalf of Plaintiffs. Rather, as further set forth below, M&S are requesting a reasonable fee that is substantially less than their lodestar and based on a percentage approved by other courts in this District in similar settlements of this nature.

*Sixth*, public policy considerations warrant approval of the fee request. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district . . . have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). The FLSA and the NYLL are remedial statutes designed to protect workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work"). Moreover, the FLSA and the NYLL are remedial statutes designed to protect workers. *See id.* at 493 (recognizing FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work"). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. *See Hall v. Prosource Techs., LLC*, 2016 U.S. Dist. LEXIS 53791, *51-52 (E.D.N.Y. Apr. 11, 2016).

In this case, public policy considerations weigh heavily in favor of awarding M&S's requested fee. The alleged violations are of long-standing duration. Nevertheless, no state or federal governmental action has ever been brought against Defendants to correct these alleged wage abuses. The award of M&S's requested fees would encourage the prosecution of similar claims and further a significant public interest goal.

In sum, all the *Goldberger* factors favor granting M&S's requested fees.

### B.    A Lodestar Cross-Check Further Confirms the Reasonableness of M&S's Fee Application

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and use the lodestar method as a "baseline" or as a "cross check." *See Goldberger*, 209 F.3d at 50. In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id.* Here, a lodestar cross-check further supports an award of one-third of the Gross Settlement Amount.

Here, Class Counsel's request for one-third of the Gross Settlement Amount represents a negative multiplier of 5.7. *See* Giaimo Decl., ¶ 48. Significantly, Plaintiffs' counsel have expended 677.05 hours on this case since its inception, representing an aggregate lodestar of $323,223.75. A negative multiplier of 5.7 is well within the range of reasonableness, as courts regularly award multipliers of up to eight times the lodestar. *See, e.g.*, *Pucciarelli v. Lakeview Cars, Inc.*, 2017 U.S. Dist. LEXIS 98641, *5-6 (E.D.N.Y. June 23, 2017) ("[c]ourts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements").

Plaintiffs' counsel is submitting herewith a summary of the billing records for each attorney and support staff that expended hours on behalf of Plaintiffs and shall submit its complete contemporaneous billing records should the Court request. *See* Giaimo Dec., Ex. 2. Based on these records and the authorities referenced above, Plaintiffs' counsel's request for one-third of the Gross Settlement Amount is fair and reasonable and should be approved.

### V.    M&S SHOULD BE REIMBURSED FOR THEIR LITIGATION EXPENSES

M&S also requests reimbursement of expenses in the amount of $10,938.58. Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to

their clients, as long as they were incidental and necessary to the representation of those clients. See *Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067, *25 (E.D.N.Y. Jan. 20, 2010) ("[c]ourts typically allow counsel to recover their reasonable out-of-pocket expenses").

Here, Plaintiffs' Counsel's unreimbursed expenses over the course of the litigation were necessary to prosecute Plaintiffs' claims. As described in the Giaimo Declaration, a substantial portion of these expenses (totaling $4,071.44) were associated with transcript fees for depositions and court appearances. The remainder of the expenses include costs associated with legal research, photocopies, travel, and other expenses that were necessarily incurred during the litigation and necessary to the representation of Plaintiffs. As such, it is appropriate for the Court to approve Plaintiffs' Counsel's request for reimbursement. *See Khait*, 2010 U.S. Dist. LEXIS 4067 at *25; *see also Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, *31-33 (S.D.N.Y. Oct. 2, 2013) ("[h]ere, Class Counsel's unreimbursed expenses, including court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary to the representation of the class.").

## **CONCLUSION**

For the reasons set forth herein, Plaintiffs respectfully request that the Court: (i) approve the parties' Settlement as fair and reasonable; (ii) grant final collective certification for settlement purposes only; (iii) award M&S attorneys' fees totaling $56,666.67; (iv) award M&S expenses totaling $10,938.58; (v) approve the proposed service award to Wilson in the amount of $10,000; and (vi) together with such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        September 26, 2024

                                    McLAUGHLIN & STERN, LLP

                                    By:   */s/ Jason S. Giaimo*
                                          Jason S. Giaimo
                                          Lee S. Shalov
                                          Brett R. Gallaway
                                    260 Madison Avenue
                                    New York, New York 10016
                                    Tel: (212) 448-1100
                                    jgiaimo@mclaughlinstern.com
                                    lshalov@mclaughlinstern.com
                                    bgallaway@mclaughlinstern.com

                                    *Attorneys for Plaintiff and the Class*